**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO.  3:20-CV-00192-DJH-CHL**

BRIAN RALEY ,                                                                       **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                            **Defendant.**

<u>**REPORT AND RECOMMENDATION**</u>

Before the Court is the complaint of Plaintiff Brian Raley ("Raley") filed March 16, 2020. (DN 1.)  In his complaint, Raley seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 405(g).  Raley filed a motion for summary judgment (DN 14) and accompanying memorandum in support (DN 14-1), and a Fact and Law Summary (DN 14-3) on February 18, 2021.   The Commissioner of the Social Security Administration (the "Commissioner") filed a Fact and Law Summary on May 24, 2021.  (DN 20.)  This matter was referred to the undersigned for a report and recommendation on Raley's motion for summary judgment.  Therefore, this matter is ripe for review.

**I.      FINDINGS OF FACT**

Raley filed an application for DIB on March 31, 2016.  (DN 10-5, at PageID # 223.)  Raley alleged that he was disabled as of July 1, 2015 due to disc replacement in his neck and a heart attack.  (*Id.*, at PageID # 106-07.)  Raley's claim was denied initially on September 6, 2016 and on reconsideration on December 8, 2016.  (DN 10-4, at PageID # 138, 143.)  An Administrative Law Judge ("ALJ") conducted a hearing on Raley's claim on April 5, 2018.  (DN 10-2, PageID # 78-104.)  During the hearing, the ALJ heard testimony from Raley, who was assisted by counsel,

as well as vocational expert William Braunig.  (*Id.*)  In a decision dated September 6, 2018, the

ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine

whether an individual is disabled, and in doing so, made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2.  The claimant has engaged in substantial gainful activity since July 1, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: Degenerative disc disease of cervical spine, partial-thickness tear, tendon impingement and mild arthritis of the left shoulder subscapularis and ischemic heart disease (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can lifting no more than 10 lbs., and can lift and carry no more than 5 lbs. with left nondominant arm, no climbing ladders and scaffolds and no crawling. He is limited to no more than occasionally flex or rotate of the neck, no pushing and pulling with the nondominant (left) arm, no overhead reaching with bilateral arms, no more than occasional reaching in front with nondominant (left) arm and no commercial driving. He may be off-task 5% of the workday.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on September 30, 1965 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2015, through the date of this decision (20 CFR 404.1520(g)).

(*Id.*, at PageID # 61-70.)

On January 15, 2020, the Appeals Council denied Raley's request for review at which time the ALJ's decision became the final decision of the Commissioner. (*Id.*, at PageID # 46.) On March 16, 2020, Plaintiff timely filed this action. (DN 1.)

## II.   CONCLUSIONS OF LAW

The Social Security Act authorizes payment of disability insurance benefits to persons with disabilities. Social Security Act, Disability Insurance Benefits, 42 U.S.C. §§ 401-34 (2012). To be entitled to disability insurance benefits, a plaintiff must establish that she became disabled prior to the expiration of her insured status. 42 U.S.C. § 423(a), (c); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). An individual shall be considered "disabled" if "[s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a).

### A.  Standard of Review

The Court may review the final decision of the Commissioner; however, the Court may only consider whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" is "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see also Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the Court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes a lack of substantial evidence, even where the Commissioner's decision can be justified by the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B.  Five Step Sequential Evaluation Process**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. § 404.1520. In summary, the evaluation process proceeds as follows:

> (1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.
>
> (2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "yes," the

4

claimant is disabled. If the answer is "no," procced to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

*Id.* The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden only shifts to the Commissioner at step five to prove the availability of other work in the national economy that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F. 3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Raley's Contentions

Raley contends that the ALJ erred evaluating the evidence in the record at step four of the five-step sequential analysis, and that as a result, the ALJ's findings at steps four and five are not supported by substantial evidence. (DN 14-3, at PageID # 796-97.) The undersigned addresses Raley's contentions below.

#### 1. Finding 5 – The ALJ's Credibility Determination

At step four of the five-step sequential analysis, the ALJ made finding 5, which was the ALJ's determination of Raley's RFC. (DN 10-2, at PageID # 65-68.) The RFC finding is the

ALJ's ultimate determination of what a claimant can still do in a work setting despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546. In assessing a claimant's RFC, the ALJ must necessarily consider the subjective allegations of the claimant and make findings. 20 C.F.R. §§ 404.1529; Social Security Ruling 16-3p. A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. 20 C.F.R. §§ 404.1529(a). In determining whether a claimant suffers from debilitating pain and/or other symptoms, the two-part test set forth in *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986), applies. First the ALJ must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* When, as in this case, the reported pain and/or other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the ALJ will consider other information and factors which may be relevant to the degree of pain alleged. 20 C.F.R. §§ 404.1529(c)(3).

While the ALJ must consider all of a claimant's statements about her symptoms, including pain, a claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. §§ 404.1529(a). Thus, in assessing a claimant's RFC, the ALJ must necessarily consider the subjective allegations of the claimant and make credibility findings.

*See id.*; Social Security Ruling 96-7p, 1996 WL 374186, at *2-*3 (S.S.A. July 2, 1996).  The Court is limited to evaluating whether or not the ALJ's explanations for partially discrediting Raley's allegations were reasonable and supported by substantial evidence in the record.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[W]e are limited to evaluating whether or not the ALJ's explanations for partially discrediting Ms. Jones are reasonable and supported by substantial evidence in the record.").  Moreover, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531.

Here, the ALJ found that Raley's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that the evidence in the record did not support a finding that the severity of the alleged symptoms rendered Raley disabled.  (DN 10-2, at PageID # 66.)  Specifically, the ALJ found that Raley had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except that he can lifting no more than 10 lbs., and can lift and carry no more than 5 lbs. with left nondominant arm, no climbing ladders and scaffolds and no crawling. He is limited to no more than occasionally flex or rotate of the neck, no pushing and pulling with the nondominant (left) arm, no overhead reaching with bilateral arms, no more than occasional reaching in front with nondominant (left) arm and no commercial driving. He may be off-task 5% of the workday.

(*Id.*, at PageID # 65-66.)

Raley argues that the ALJ erred: (1) in failing to consider objective medical evidence of Raley's symptoms; and (2) in failing to make specific findings of fact as to how Raley's allegations of pain and symptoms were consistent with the record.  (DN 14-1, at PageID # 787-93.)

### i.  Consideration of Objective Medical Evidence

Raley argues that the ALJ erred in evaluating Raley's symptoms by failing to consider objective medical evidence consistent with his allegations as required by 20 C.F.R. § 404.1529 and SSR 16-3p. (DN 14-1, at PageID # 787-89.) Specifically, Raley argues that the ALJ ignored evidence of Raley's neck pain and range of motion limitations in the neck. (*Id.*) Raley asserts that the ALJ dedicated fewer than two pages of the decision to discussing the medical evidence and alleges that the discussion merely "recites the conclusions made by the examining doctors" with considering the underlying "objective signs found on the multiple physical examinations that documented severe restrictions in his range of motion and significant pain with range of motion testing." (*Id.*, at PageID # 788.) Raley argues that the omission warrants reversal because "consistent medical evidence supporting his claim was left out of the decision." (*Id.*)

In response, the Commissioner notes that the ALJ was not required to discuss every piece of evidence in the record, and asserts that the ALJ "discussed most, if not all, the evidence mentioned above." (DN 20, at PageID # 827-28.) The Commissioner reviews the ALJ's discussion of Raley's diagnostic history, surgical procedures, treatment records, and work history at steps two and four of the five-step sequential analysis. (*Id.*, at PageID # 828-29.) The Commissioner argues that in scrutinizing the lack of explicit discussion of Raley's neck range of motion, Raley "is focusing on one clinical finding, while ignoring the evidence the ALJ discussed and the limitations she imposed for his cervical impairment." (*Id.*, at PageID # 829.) The Commissioner again notes the ALJ's discussion of the evidence of Raley's cervical impairment which gave rise to his neck issues and argues that the ALJ directly addressed Raley's neck issues in the RFC limitation "to no more than occasionally flex or rotate of the neck." (*Id.*) (citing DN 10-2, at PageID # 66.) The Commissioner also notes the ALJ's extensive questioning concerning

Raley's limited neck range of motion during the vocational expert's hearing testimony.  (*Id.*) (citing DN 10-2, at PageID # 99.)

The undersigned finds that the ALJ met the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p in considering the objective medical evidence of Raley's symptoms.  Generally, an ALJ has a duty not to cherry-pick facts from the record to support a finding of not disabled where a finding of disabled would otherwise be appropriate.  *Smith v. Comm'r of Soc. Sec.*, No. 1:11-cv-2013, 2013 WL 943874, at *6 (N.D. Ohio, March. 11, 2013) (citations omitted). However, an ALJ does not cherry-pick the record simply by resolving discrepancies in the record against the claimant. *Id.*  Moreover, the undersigned does not conduct a *de novo* review of the record, and an ALJ's findings are not subject to reversal for the sole reason that substantial evidence could support the opposite finding.  *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001).  What some describe as "cherry-picking" may more neutrally be termed weighing the evidence.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).

Here, the ALJ's decision includes a thorough review the medical evidence dating back to 1999 with citations to the record, including his diagnostic history, results of clinical testing through MRI, x-ray, and radiographic studies, evaluations by independent medical examiners, and interventions through conservative treatment, medication, and surgery.  (DN 10-2, at PageID # 64-65, 67-68.)  Raley understates the extent of the ALJ's discussion of the medical evidence in asserting that it consisted of less than two pages reciting only the opinions of medical examiners. This characterization ignores the additional two pages summarizing the objective medical evidence at step two of the five-step sequential analysis.  *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (looking to whether ALJ's decision as a whole complied with the regulations in determining whether the ALJ committed a prejudicial error).  Additionally, it isn't fair to say

that the ALJ's discussion at step five included *no* findings regarding the underlying medical evidence.  For example, the ALJ noted that Raley "had a second cervical fusion and he has three fused vertebrae in his neck.  Cervical myelogram of January 2017 found bilateral foraminal narrowing with mild foraminal narrowing at the cervical plate fusion from C5 through C7."  (DN 10-2, at PageID # 67.)   The ALJ further noted that in 2016, a medical examiner "reported the claimant's complaints of left shoulder pain were consistent with cervical radiculopathy, primarily at C7 level. He recommended a myelogram that was done in January 2017 that found bilateral foraminal narrowing from C5 through C7 disc levels."  (*Id.*, at PageID # 68.)

Although the ALJ did not explicitly mention that clinical findings showed reduced range of motion and neck pain, it is clear that she took this evidence into account.  *See Coppage v. Berryhill*, No. 1:16-CV-00144-GNS, 2017 WL 8640926, at *4 (W.D. Ky. Aug. 11, 2017), report and recommendation adopted, No. 116CV00144GNSHBB, 2018 WL 305336 (W.D. Ky. Jan. 5, 2018) ("The ALJ's decision does not discuss every single piece of medical evidence, but she is not required to do so.").  For example, during the hearing, the ALJ heard extensive testimony from Raley and the vocational expert concerning Raley's neck pain and range of motion.  (*Id.*, at PageID # 80-82, 84-89, 93-95, 97-102.)  In the decision, the ALJ cites to the underlying evaluation of Dr. John Vaughan and explicitly assigned substantial weight to his recommended limitation to "no repetitive bending and twisting of the neck."  (*Id.*)  The ALJ's RFC determination was actually more restrictive, precluding any more than occasional flexing or rotating the neck.  (*Id.*, at PageID # 66.)  Raley does not cite to any specific piece of evidence that would require the ALJ to conclude that Raley's neck issues could not be sufficiently addressed with the ALJ's limitation.  Accordingly, the undersigned finds that the ALJ's consideration of the medical evidence was legally sufficient.

### ii. Specific Findings of Fact Regarding Alleged Symptoms

Raley argues that the ALJ failed to make specific findings of fact as to Raley's statements about the severity of his symptoms as required by SSR 16-3p.  (DN 14-1, at PageID # 789-91.)  Raley asserts that the ALJ failed to compare the objective medical evidence to "his allegations of severe pain that caused him to spend most of his time sitting in a recliner or lying down, and which limited his ability to perform routine chores, cook, drive, shave, and dress."  (*Id.*, at PageID # 789.)  Raley cites to the following passage in the decision: "As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the objective medical evidence and other evidence, medical sources, non-medical sources, and factors in 20 CFR 404.1529(c) and/or 416.929(c) are inconsistent with the claimant's statements about his alleged symptoms."  (*Id.*, at PageID # 780) (quoting DN 10-2, at PageID # 65-66.)  Raley argues that this analysis does not comply with the guidance set forth in SSR 16-3p which provides that a single conclusory statement that a claimant's statements are or are not consistent with the record is insufficient.  (*Id.*) (quoting SSR 16-3p at *9.)

In response, the Commissioner asserts that the ALJ's consideration of Raley's statements was not limited to the above passage.  (DN 20, at PageID # 830.)  The Commissioner notes that the ALJ also included a paragraph summarizing Raley's statements concerning his symptoms and his activities of daily life.  (*Id.*) (quoting DN 10-2, at PageID # 65.)  The Commissioner points out that the ALJ specifically addressed Raley's allegations of disabling neck pain in noting that Raley testified that he was never prescribed or sought a neck brace.  (*Id.*) (quoting DN 10-2, at PageID # 65.)  The Commissioner argues that this analysis satisfied SSR 16-3p given that elsewhere in the decision, the ALJ considered Raley's medical history and concluded that the evidence supported a finding that he was not disabled.  (*Id.*, at PageID # 830-31.)

The undersigned finds that the ALJ adequately addressed Raley's statements about the severity of his symptoms.  An ALJ need not "make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts."  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999).  Raley does not point to any actual conflict between the ALJ's RFC determination and any of his statements about the severity of his symptoms—statements that the ALJ expressly considered.  (*See* DN 10-2, at PageID # 65.)  Instead, Raley merely suggests that the evidence ought to be reweighed, (DN 14-1, at PageID # 790-91), which is not a permissible basis for reversal.  *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) ("In reviewing the ALJ's decision, we 'may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility.'" (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### 2.  Finding 5 – Evaluation of Medical Opinion Evidence

The RFC finding is based on a consideration of medical source statements and all other evidence, medical and non-medical, in the record.  20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546.  "Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis."  Social Security Ruling 96-5p, 1996 WL 374183, at *4 (S.S.A. July 2, 1996).  "Acceptable medical sources" include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  20 C.F.R. § 404.1513.  Thus, in making the RFC finding, the ALJ must (1) assign weight to the medical source statements in the record; and also (2) consider the descriptions and

observations of the claimant's limitations as a result of the impairments from the claimant and the claimant's family and friends.  20 C.F.R. § 404.1545(a)(3).

The source of a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart*, 710 F.3d at 376.  Treating sources must be given controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "not inconsistent with the other substantial evidence in [the] case record."  *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).  If the treating source is not given controlling weight, then the "opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence."  *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)).  Whatever weight the ALJ accords a treating source's opinion, he or she must set forth "good reasons" for doing so.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) ("The regulation requires the agency to 'give good reasons' for not giving weight to a treating physician in the context of a disability determination.") (citing 20 C.F.R. § 404.1527(d)(2)).  Opinions from examining and non-examining medical sources are assessed under these same guidelines (i.e., examining relationship, specialization, consistency, and supportability), but are never assessed for controlling weight.  *Id.*  Finally, while opinions from treating, examining, and non-examining medical sources must be considered in determining RFC, the ALJ is ultimately responsible for the RFC finding.  20 C.F.R. §§ 404.1527(e); Social Security Ruling 96-5p, 1996 WL 374183, at *2.

### i.  The ALJ's Findings

On August 24, 2016, Dr. Scott R. Hamman ("Dr. Hamman") performed a consultative examination of Raley. (DN 10-7, at PageID # 521-25.) Based on the information obtained during the examination, Dr. Hamman concluded that:

> [Raley] appears capable of lifting and carrying 10 pounds frequently and 25 pounds occasionally. He will be unable to lift any weight above his head secondary to his severe cervical spine pathology and left upper extremity radiculopathy. He can stand up to 2 hours at a time. He can stand or walk 6 hours out of an 8-hour day. He can kneel occasionally and squatting is not precluded. He can hear and understand normal conversational speech. He is able to ambulate without the use of an assistive device.

(*Id.*, at PageID # 524.) The ALJ assigned Dr. Hammad's opinion substantial weight, and stated that "[h]is findings are incorporated into the residual functional capacity." (DN 10-2, at PageID # 67.)

On December 13, 2016, Dr. Michael M. Best ("Dr. Best") performed a consultive examination of Raley. (DN 10-7, at PageID # 642-55.) Although Dr. Best did not explicitly express an opinion as to Raley's RFC, he found varying limitations to Raley's cervical flexion, extension, right and left lateral bending, and right and left rotation abilities. (*Id.*, at PageID # 648.) The ALJ noted that Dr. Best expressed no RFC opinion, but found that the RFC finding was consistent with Dr. Best's "findings of left shoulder pain and limiting effects with limitation in pushing and pulling of the left arm, no overhead reaching with bilateral upper extremities and only occasional reaching in front with the left arm and no commercial driving." (DN 10-2, at PageID # 68.)

On March 2, 2017, Dr. Frank A. Burke ("Dr. Burke") performed a consultative examination of Raley. (DN 10-7, at PageID # 668-71.) Based on the information obtained during the examination, Dr. Burke concluded that Raley is not "going to be able to return to the same work that he was previously engaged in. He simply does not have the strength or the rage of motion

in his neck to permit this without significant pain and the potential for worsening." (*Id.*, at PageID # 671.) On May 2, 2017, Dr. Burke completed an addendum to his evaluation that considered subsequent developments in which Dr. Burke concluded that "with the ongoing symptoms that this patient experiences at rest which interfere with basic ADLs that the concept of him being able to perform sedentary activities is impossible." (*Id.*, at PageID # 667.) The ALJ assigned "great weight" to the finding that Raley could not return to relevant past work, but that his addendum "limiting the claimant to sedentary work and unable to return to the workforce is given little weight." (DN 10-2, at PageID # 67.)

In March 2017, Dr. J. Rick Lyon ("Dr. Lyon") performed a consultative examination of Raley. (DN 10-7, at PageID # 752-66.) In a report dated March 30, 2017, Dr. Lyon concluded that "Raley can perform a sedentary job. He will need to change positions as necessary for symptom relief and should have an ergonomically correct workstation." (*Id.*, at PageID # 765.) The ALJ assigned the opinion "little weight" because it "was not clear, as he did not provide a limitation by limitation of the claimant's functioning." (DN 10-2, at PageID # 67.) The ALJ also noted that Dr. Lyon "is a one-time, independent examiner for worker's compensation claim, not a treating source with long-standing treatment history." (*Id.*)

On May 1, 2017, Dr. John Vaughan ("Dr. Vaughan") performed a consultative examination of Raley. (DN 10-7, at PageID # 672-75.) Based on the information obtained during the examination, Dr. Vaughan concluded that "appropriate restrictions would include no overall lifting greater than 20 pounds, no repetitive lifting of weights greater than 5 pounds, no overhead lifting or reaching, no use of ladders, no repetitive bending and twisting of the neck, and no use or operating of vibrating machinery or equipment." (*Id.*, at PageID # 674.) The ALJ found that Dr.

Vaughan's recommended limitations were consistent with Raley's physical impairment, and thus assigned Dr. Vaughan's opinion substantial weight.  (DN 10-2, at PageID # 67.)

### ii.  Dr. Hamman

Raley argues that the ALJ assigned undue weight to the opinion of Dr. Hamman.  (DN 14-1, at PageID # 792-93.)  First, Raley noted that Dr. Hamman was the only examining physician that expressed an RFC opinion on the record that was not an orthopedic surgeon.  (*Id.*, at PageID # 792.)  Because Dr. Hamman is a family medicine practitioner, Raley argues that the specialization factor governing the evaluation of medical opinions does not favor assigning his opinion substantial weight.  (*Id.*)  Raley also asserts that unlike the other consultative examiners, Dr. Hamman did not review Raley's medical records during the examination or in preparing his report.  (*Id.*)  Raley argues that Dr. Hamman's opinion was inconsistent with the medical records. (*Id.*)  Specifically, Raley asserts that Dr. Hamman's opinion that Raley can occasionally lift twenty-five pounds is inconsistent with the fact that in April 2016, Raley had been cleared by his treating orthopedic surgeon, Dr. Robert Knetsche ("Dr. Knetsche"), to return to work lifting no more than twenty-five pounds, but was subsequently ordered off work beginning in June 2016 due to pain, and was never cleared to return to work.  (*Id.*)  Based on these facts, Raley argues that Dr. Hamman's opinion is not supported by the record.  (*Id.*)

In response, the Commissioner argues that Dr. Hamman's specialization does not discount the weight of his opinion because specialization "is not the only or most important factor that the ALJ has to consider."  (DN 20, at PageID # 822.)  In the alternative, the Commissioner argues that Dr. Hamman's lack of specialization does not render the ALJ's RFC determination unsupported by substantial evidence because the ALJ also relied on the opinion of Dr. Vaughan, who is an orthopedic surgeon.  (*Id.*)  The Commissioner cites to the Kentucky Board of Medical Licensure

physician database in which a Dr. John J. Vaughan is noted with "orthopeadic surgery" as his area of practice.  (*Id.*)

As an initial matter, the undersigned declines to consider evidence concerning Dr. Hamman's and Dr. Vaughan's specialization.  While Raley's brief states that Dr. Hamman is a family medicine practitioner, he cites to no evidence, in the record or otherwise, supporting that assertion.  (*See* DN 14-1, at PageID # 792.)  The Commissioner's assertion that Dr. Vaughan's specialization is in orthopedic surgery is supported only by a webpage outside of the record available to the ALJ.  (*See* DN 20, at PageID # 821.)  When considering the denial of a claimant's application for disability insurance benefits, the court normally may only review the administrative record presented to the ALJ.  *Salyer v. Comm'r of Soc. Sec.*, 574 F. App'x 595, 597 (6th Cir. 2014). The court may rarely consider evidence outside of the administrative record.  *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 839 (6th Cir. 2016) ("consideration of evidence outside the administrative record is proper under some circumstances, e.g., for background information...or for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision.") (internal quotation marks omitted). In *Miller*, the Sixth Circuit reversed a district court's decision to consider evidence outside of the administrative record regarding a medical source's credentials.  *Id.* at 839-40.  The undersigned found no evidence of the area of specialization of either Dr. Hamman or Dr. Vaughan, and the undersigned will not consider extemporaneous evidence of specialization on review.  Further, even if the undersigned were to consider Dr. Hamman's alleged status as a family medicine practitioner or Dr. Vaughan's alleged status as an orthopedic surgeon, it would not necessarily impact the weight of their opinions because "'specialization' is only one factor for the ALJ to consider." *Lusher v. Comm'r of Soc. Sec.*, No. 1:17-CV-01947, 2018 WL 3302988, at *18 (N.D. Ohio July

5, 2018) (citing *Fagan v. Astrue*, No. 1:09 CV 00019, 2010 WL 481278, at *6 (N.D. Ohio Feb. 5, 2010)).

Raley's argument that Dr. Hamman's opinion is not supported by the record is also unpersuasive. First, despite Raley's assertion that Dr. Hamman did not review Raley's medical records, Dr. Hamman's evaluation explicitly states that "[t]he contents of the medical accompanying the claimant's authorization were reviewed." (DN 10-7, at PageID # 523.) Notwithstanding this fact, Raley argues that Dr. Hamman's opinion that Raley could occasionally lift twenty-five pounds is not supportable because it is inconsistent with the records of Raley's treatment by Dr. Knetsche. (DN 14-1, at PageID # 792.) Raley misstates the record. On April 20, 2016, Dr. Knetsche cleared Raley to return to work "with a six week restriction of lifting less than 25 lbs.," and on June 1, 2016, Dr. Knetsche "requested he be off work for three months to allow more time for healing and to identify the cause of his remaining pain." (DN 10-7, at PageID # 499, 503.) However, contrary to Raley's assertion, nowhere in his treatment records does Dr. Knetsche "acknowledge [Raley] could not lift as much" as twenty-five pounds. (DN 14-1, at PageID # 792.)

Moreover, even if Raley could show that Dr. Hamman's opinion that Raley could occasionally lift twenty-five pounds was unsupported by the record, he could not establish that the ALJ erred in assigning substantial weight to Dr. Hamman's opinion because the ALJ did not adopt Dr. Hamman's twenty-five pound lifting limitation. "An ALJ is not required to blankety adopt all limitations in a particular opinion, even one to which he assigns 'great weight.'" *Suggs v. Saul*, No. 3:19CV-00738-RE, 2020 WL 5880966, at *4 (W.D. Ky. Oct. 2, 2020) (citations omitted). So long as the ALJ's RFC determination considered the entire record, the ALJ is permitted to make necessary decisions about which medical findings to credit and which to reject in determining the

claimant's RFC.  *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 587 (6th Cir. 2013) (unpublished).  However, the ALJ is required to recognize any conflict between the functional limitations described in a medical opinion and the ALJ's RFC finding, and explain why he chose to credit one portion over another.  *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013).

Here, the ALJ considered the evidence in the record in determining Raley's lifting limitation in his RFC.  This included the opinions of Dr. Hamman and Dr. Vaughan, who recommended twenty-five pound and twenty-pound lifting restrictions respectively.  (DN 10-2, at PageID # 67.)  The ALJ also questioned Raley extensively about his lifting ability during the hearing.  (*Id.*, at PageID # 80-81, 84, 86, 88.)  Ultimately, the ALJ's RFC finding included a more restrictive limitation than Dr. Hamman recommended, "lifting no more than 10 lbs., and can lift and carry no more than 5 lbs."  (DN 10-2, at PageID # 65-66.)  Thus, to the extent that Dr. Hamman's lifting limitation was unsupported, Raley cannot establish that the ALJ erred in relying on Dr. Hamman's evaluation, because Raley benefitted from a greater limitation in the ALJ's RFC determination.  *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 787 (6th Cir. 2017) (ALJ who "was even more restrictive" than agency-appointed expert did not commit error).

### iii.  Dr. Vaughan

Raley argues that the ALJ assigned undue weight to the opinion of Dr. Vaughan.  (DN 14-1, at PageID # 792-93.)  Raley specifically argues that Dr. Vaughan's opinion was not entitled to substantial weight because: (1) Dr. Vaughan was a one-time examiner; (2) Dr. Vaughan's recommended lifting limitation is not supported by the record; and (3) Dr. Vaughan did not opine about sitting, standing, or walking limitations.  (*Id.*)  The undersigned addresses each contention below.

First, Raley's contention that the ALJ misapplied the examining relationship factor of 20 C.F.R. § 404.1527(c) is unpersuasive. Raley notes that Dr. Vaughan was a one-time examiner and suggests that this is inconsistent with the fact that the ALJ "rejected Dr. Lyon's for the same reason." (*Id.*, at PageID # 792.) Raley argues that, "[g]iven both doctors were performing IMEs for a worker's compensation claim, the regulation places them on equal footing from an examination standpoint." The undersigned sees no inconsistency in the ALJ's application of 20 C.F.R. § 404.1527(c)(1). First, the ALJ did not rely on the examining relationship between Dr. Vaughan and Raley in assigning Dr. Vaughan's opinion substantial weight, but rather based on its supportability and consistency with the record. (DN 10-2, at PageID # 67.) Additionally, the ALJ did not reject Dr. Lyon's opinion solely based on the examining relation. Rather, the ALJ found that Dr. Lyon's "opinion was not clear, as he did not provide a limitation by limitation of the claimant's functioning." (*Id.*) While the ALJ also noted that Dr. Lyon was a one-time examiner, the ALJ did not do so to differentiate his opinion from the opinions of other independent medical examiners like Dr. Vaughan. (*Id.*) The ALJ was merely pointing out that Dr. Lyon was not entitled to any special, deferential consideration, because Dr. Lyon is "not a treating source with long-standing treatment history." (*Id.*)

Second, Raley's contention that Dr. Vaughan's recommended lifting limitation of twenty pounds is inconsistent with the record is also unpersuasive. Dr. Vaughan's lifting limitations included "no overall lifting greater than 20 pounds, no repetitive lifting of weights greater than 5 pounds, no overhead lifting or reaching . . . ." (DN 10-7, at PageID # 674.) Raley argues that this opinion "is [] similar to Dr. Hamman's opinion which is less than credible given Mr. Raley's inability to return to work and lift up to twenty-five pounds." (DN 14-1, at PageID # 793.) Raley's allegation that his inability to return to work since June 2016 was due to an inability to lift twenty-

five pounds is addressed in Part II.C.2.ii *supra*; in short, nothing in Raley's treatment records indicate that he was ordered not to return to work due to lifting restrictions.  Raley also asserts that Dr. Best's objective functional testing in December 2016 revealed a "combined lifting ability of only 11.6 pounds." (*Id.*)  Raley again misstates the record.  On December 13, 2016, Raley completed a functional abilities evaluation.  (DN 10-7, at PageID # 656-62.)  The evaluation measured the "combined average force" of Raley's arm lift (11.4 pounds), leg lift (23.9 pounds), shoulder lift (14.9 pounds), and torso lift (33.9 pounds).  (*Id.*, at PageID # 658-60.)  Raley does not state how Dr. Vaughan's lifting restriction is inconsistent with these findings.  Accordingly, the undersigned finds that Dr. Vaughan's recommended lifting limitation does not undermine the ALJ's finding that his opinion was entitled to substantial weight.

Third, Raley's contention that Dr. Vaughan's evaluation is unclear because Dr. Vaughan did not opine as to Raley's sitting, standing, or walking limitations is also unpersuasive.  Raley argues that this omission by Dr. Vaughan renders "his opinion [] unclear—a charge the ALJ leveled at Dr. Lyon's opinion." (DN 14-1, at PageID # 793.)  The undersigned understands Raley's point to be similar to his argument about Dr. Vaughan's examining relationship, namely that the ALJ unfairly scrutinized Dr. Lyon's evaluation without holding Dr. Vaughan to the same standard.  Raley is drawing a false equivalency between an RFC opinion that does not comment on all of a claimant's physical abilities and an opinion doesn't that comment on *any* recognized work activity limitations.  Here, the ALJ did not discount Dr. Lyon's opinion because it left out discrete limitations like stooping or crouching, but rather the ALJ found the opinion "was not clear" when it assessed Raley's limitations in terms of percentage of impairment in categories that don't easily translate to workplace physical limitations contemplated by the regulations.  (DN 10-2, at PageID # 67; DN 10-7, at PageID # 764-65.)  *See* 20 C.F.R. § 404.1545(b) ("A limited ability to perform

certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work."). Moreover, Raley provides no argument beyond the sentence quoted above as to why Dr. Vaughan's omission of sitting, standing, or walking limitations renders his opinion less persuasive. Therefore, the undersigned deems this issue waived. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); *Rice v. Comm'r of Soc. Sec.*, 2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion).

### iv.  Dr. Lyon and Dr. Burke

Raley argues that the ALJ erred in assigning little weight to the opinions of Dr. Lyon and Dr. Burke limiting Raley to sedentary work.  (DN 14-1, at PageID # 793.)  The definitions of sedentary and light work are set forth in 20 C.F.R. § 404.1567.  SSR 96-5p cautions that an ALJ "must not assume that a medical source using terms such as 'sedentary' and 'light' is aware of our definitions of these terms."  SSR 96-5p at *5 (1996).  Whether a claimant is capable of sedentary or light work is a determination reserved to the ALJ.  (*Id.*) ("The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability.").  *See* 20 C.F.R. § 404.1527(d).

Raley argues that the ALJ should have adopted Dr. Lyon's and Dr. Burke's opinions restricting Raley to no more than sedentary work because "there is no indication they failed to know what sedentary meant."  (DN 14-1, at PageID # 793.)  Raley suggests that the ALJ's basis for discounting the opinions of Dr. Burke and Dr. Lyon—that they don't clearly articulate Raley's

physical workplace limitations—does not apply to their exertional opinions because "[b]eing placed on sedentary duty is not susceptible to different interpretations." (*Id.*)  Raley also argues that the range of Raley's limitations meets the definition of sedentary work, given that the ALJ determined Raley's lifting limitation to be within the sedentary range and his past work on "light duty" consisted of sedentary levels of sitting. (*Id.*)

In response, the Commissioner argues that Raley's contention that the ALJ should have deferred to Dr. Lyon's and Dr. Burke's opinions on Raley's capacity for sedentary work directly contradicts SSR 96-5p and prior orders of this Court. (DN 20, at PageID # 825-26.)  The Commissioner asserts that given the guidance on SSR 96-5p, "it was appropriate for the ALJ to make the distinction between Drs. Vaughan and Hamman's opinions, which listed specific functional limitations and Dr. Lyon and Dr. Burke, which either noted that Plaintiff could perform sedentary activity or could not perform that level of work." (*Id.*, at PageID # 825.)

Raley's argument that a medical opinion concerning capacity to perform sedentary work is somehow more reliable than an opinion concerning other exertional limitations is without merit. SSR 96-5p draws no distinction between opinions on capacity to perform sedentary work and opinions on capacity to perform light work; both determinations are reserved to the Commissioner. SSR 96-5p at *5; 20 C.F.R. § 404.1527(d).  Here, the ALJ's RFC determination included light work with lifting limitations and no pushing and pulling with his nondominant hand, *inter alia*. (DN 10-2, at PageID # 65-66.)  Raley does not dispute the functional limitations. (*See* DN 14-1, at PageID # 793.)  Given the limitations, it was within the ALJ's zone of choice to find that Raley could perform light work as defined by the regulations.  *See* 20 C.F.R. § 404.1567(b) ("Even though the *weight lifted may be very little*, a job is in this category when it requires a good deal of walking or standing, or when it *involves sitting most of the time* with *some* pushing and pulling of

arm or leg controls.")   Raley's argument that his established functional capacity meets the definition of sedentary work does not undermine the ALJ's finding.  *See id.* ("If someone can do light work, we determine that he or she can also do sedentary work.")   Accordingly, the undersigned finds that the ALJ's finding that Raley can perform light work was supported by substantial evidence, and therefore, the ALJ did not err in rejecting Dr. Lyon's and Dr. Burke's opinions concerning Raley's physical exertion abilities.

**3. Findings 9, 10, and 11 – Medical Vocational Grid Rules, Jobs in the National Economy Raley Can Perform, and Disability Onset Date**

Raley objects to the ALJ's findings 9, 10, and 11, all on the grounds that the findings are not supported by substantial evidence due to Raley's contention that he is limited to no more than sedentary work.  (DN 14-3, at PageID # 797.)  Because the undersigned finds that the ALJ's RFC determination, including Raley's capacity to perform light work, is supported by substantial evidence, these objections are without merit.

## III.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Raley's motion for summary judgment (DN 14) be **DENIED with prejudice** and that the final decision of the Commissioner be **AFFIRMED**.

Colin H Lindsay, Magistrate Judge

United States District Court

July 27, 2021

cc:  Counsel of record

## Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).